**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

SOLOMON WRIGHT,

                Petitioner,

     -against-

WILLIAM LEE,

                Respondent.

-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:__  6/26/2014

**13-CV-05492 (PGG)(SN)**

**REPORT AND**
**RECOMMENDATION**

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE PAUL G. GARDEPHE:

      Before the Court is petitioner Soloman Wright's[1] petition for a writ of *habeas corpus*

under 28 U.S.C. § 2254 to set aside his conviction in state court on the grounds that: (1) the

prosecutor improperly shifted the burden of proof by referencing Wright's decision not to testify

at trial; (2) there was insufficient evidence to convict Wright of first degree assault; and (3)

Wright's sentence was unduly harsh. Because the state appellate court's denial of Wright's

sufficiency of the evidence claim was not contrary to or an unreasonable application of clearly

established federal law, and because Wright's remaining claims are either not cognizable or are

procedurally barred from federal *habeas* review, the Court recommends that Wright's petition be

DENIED.

---

[1] Although the petitioner's first name is spelled as "Solomon" in the case title, he clarified in his state
court direct appeal brief that his first name is spelled "Soloman." (Litsky Decl., Ex. A at 1. n.1 (Direct
App.).)

## BACKGROUND

### I.      Procedural Overview

After a jury trial that began on February 5, 2009, the petitioner Soloman Wright

("Wright") was convicted of one count each of Assault in the First Degree, N.Y. Penal Law

("Penal Law") § 120.10(1), Assault in the First Degree, Penal Law § 120.10(2), and Criminal

Possession of a Weapon in the Fourth Degree, Penal Law § 265.01(2). He was acquitted of

Attempted Murder in the Second Degree, Penal Law §§ 110, 125.25(1). On June 23, 2009,

Wright was sentenced to two prison terms of 12 years and five years of post-release supervision

on the assault counts, and a one-year term on the weapons count, all to run concurrently. On

December 27, 2012, Wright's conviction was affirmed unanimously by the Appellate Division of

the New York Supreme Court, First Department (the "Appellate Division"). The New York

Court of Appeals denied leave to appeal on June 7, 2013.

Wright, proceeding *pro se*, filed this petition for a writ of *habeas corpus* under 28 U.S.C.

§ 2254 on August 5, 2013, alleging that he is being held in state custody in violation of his

federal constitutional rights. On August 23, 2013, the Honorable Paul G. Gardephe referred this

matter to me for a report and recommendation.

### II.     Factual Background

Wright's *habeas* petition arises from his conviction for attacking William Hamilton

("Will" or "Hamilton") with a box cutter and slicing his neck, requiring hospitalization and

stitches. Wright is serving his sentence in the Green Haven Correctional Facility in Dutchess

County, New York. The following facts are derived from the records of Wright's pre-trial proceedings, trial, and post-conviction appeals and motions.[2]

### A.    Wright's Charged Criminal Conduct and Arrest

On the afternoon of September 30, 2007, in a playground area in the East River Houses in upper Manhattan, Wright approached and cut Hamilton's neck with a box cutter. When Hamilton realized that he had been cut, he retreated from the altercation and ran to a nearby hospital where he was treated for his wound and hospitalized for five days. The police spoke with Hamilton at the hospital but Hamilton refused to identify his assailant. Later, pursuant to a cooperation agreement in an unrelated criminal case pending against him, Hamilton agreed to tell the police who assaulted him. Hamilton identified Wright, after which Wright was arrested.

The New York County Grand Jury indicted Wright on four counts. Two of those counts charged Wright with assault in the first degree against Hamilton, in violation of, respectively, two subsections of Penal Law § 120.10 that provide as follows:

A person is guilty of assault in the first degree when:

1.  With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or

2.  With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person. . . .

Penal Law §§ 120.10(1), 120.10(2). New York penal law defines "serious physical injury" as a "physical injury which creates a substantial risk of death, or which causes

---

[2] Trial transcript citations ("T.") refer to the document attached to the Declaration of Thomas B. Litsky (the "Litsky Declaration") at Docket Number 11-3. Voir dire and pre-trial hearing transcript citations ("V.") refer to the document attached to the Litsky Declaration at Docket Number 11-2. All other record citations are to state court appellate briefs and decisions, which are attached to the Litsky Declaration as Exhibits A through G at Docket Number 11-1. Page citations refer to the page number listed on the cited document, not to the ECF page number.

death or serious and protracted disfigurement, protracted impairment of health or

protracted loss or impairment of the function of any bodily organ." Penal Law §

10.00(10). Wright was also indicted on one count of second degree attempted murder

(Penal Law §§ 110, 125.25) and one count of fourth degree weapons possession (Penal

Law § 265.01(2)).

###### B.        The Trial

####### 1.        Pre-trial Evidentiary Hearing

On February 3, 2009, Wright's defense counsel, Damien Brown ("defense counsel" or

"Wright's counsel"), and the prosecutor, David O'Keefe (the "prosecutor"), appeared before

New York County Supreme Court Justice Bruce Allen for a preliminary proceeding to resolve

several matters, including the admissibility of three recorded telephone conversations Wright had

while in prison. The first of these conversations, on July 23, 2008, was with Edgar Figueroa,

Wright's friend. The other two conversations, on July 24 and August 1, 2008, were with Lisa, the

mother of Wright's seven-month-old child. In the call to Figueroa, Wright references another

"case," discussing "some other so called shit supposed to have happened . . . but [I] never got

charged for the shit." (Litsky Decl., Ex A at 10; Ex. B at 6).[3] Wright also stated, "[the] police

know about it[,] but duke ain't go to the police, he held it down."[4] (Id., Ex. B at 7.) In the first

conversation with Lisa, Wright asked if she remembered "that shit that happened with . . . Will"

and told her that the police "know about it, but he never went to the police." (Id., Ex. B at 8.)

Wright also said that he "never got charged for it" and "I don't even have that case." (Id., Ex. A

---

[3] The only quotations from the recordings in the record before the Court are those contained in Wright's
direct appeal and the respondent's opposition to the direct appeal. The citation provided for those
quotations is "People's Exhibit 6."

[4] At trial, Figueroa testified that "duke" was a slang term used generically to refer to a person. (T. at 69-
70.)

at 10; Ex. B at 8.) In the second conversation, Lisa told Wright that "Will won't be coming to

court," to which Wright responded, "I'm not even worried about Will, because if Will wanted to,

I woulda been locked up before this, before this case woulda happen[ed]." (Id., Ex. A at 10-11;

Ex. B at 8.)

At the hearing, the prosecutor argued that the recordings would be offered not to prove

the truth of their content, but to show Wright's state of mind and his acknowledgement of his

involvement in the charged crimes. The prosecutor wanted to offer the recordings both for what

Wright did say and for what Wright did not say: "[Wright] acknowledges that [he] can't be

charged for that because [Will Hamilton] hasn't come forward so how can [he] be charged? He

doesn't say I don't know what they're talking about. He doesn't say it's not me. He doesn't say

they're framing me. These are all the arguments I'm going to be making. . . . He's not denying,

he's not saying I don't know what they're talking about." (V. at 16, 27.) The judge found that the

recordings were admissible. Defense counsel stated during the hearing that Wright did not wish

to testify at trial.

Voir dire began immediately after the hearing. Defense counsel explained to the

prospective jurors the government's burden of proof. He then asked if anyone would have a

problem refraining from drawing unfavorable inferences should Wright choose not to testify in

his defense, focusing many of his questions and explanations on this subject.

### 2.      The Prosecution's Case

Wright's jury trial began on February 5, 2009. The prosecutor called Hamilton as a

witness. Hamilton testified that, in September 2007, he was 18 years old and lived in the

Woodrow Wilson Houses, an upper Manhattan housing project. The neighborhood is known to

be dangerous and is overrun by the Crips and Bloods gangs. Hamilton was familiar with the

5

Crips and had several Crip friends, but did not himself belong to the gang. Hamilton sold crack

cocaine in and around the Wilson Houses and the nearby East River Houses. Between July and

September of 2007, Hamilton was the subject of three pending criminal cases related to his drug

dealing and at one point served jail time for violation of his probation.

On September 9, 2007, Hamilton was with two friends when they encountered Wright.

Wright and one of Hamilton's friends got into an argument, which escalated into a physical

altercation during which Hamilton's friend tore off and ran away with Wright's jeans and

sneakers. Hamilton fled with his friend, but he testified that he did not take part in the physical

altercation and, feeling badly for Wright, later retrieved the stolen clothing and returned them to

Wright.

On September 30, 2007, Hamilton walked into a playground at the East River Houses and

saw Wright. Wright attacked Hamilton, and they struggled with one another until Hamilton

managed to break away. As Hamilton stepped back, he saw that Wright was holding a box cutter.

Although Hamilton thought Wright might have cut him, he continued to fight until a bystander

called out that he was bleeding. At that point, Hamilton realized that he was bleeding heavily

from his neck and ran away to the nearby Metropolitan Health Center. Wright fled in the

opposite direction.

New York Police Department Detective John D'Alessio ("D'Alessio") was in the

Metropolitan Health Center that same afternoon, investigating an unrelated crime. At trial,

D'Alessio testified that he had seen Hamilton running toward the hospital's emergency entrance

while holding his neck and bleeding profusely. Based on the immediately apparent severity of

Hamilton's injury and the type of wound – a blade cut – D'Alessio inferred that Hamilton was

the victim of a crime and followed him inside. The doctors diagnosed Hamilton with a laceration

6

to the neck, with a length of approximately 20 centimeters and a depth of one centimeter. The laceration was sutured, and Hamilton was admitted to the hospital with "post-traumatic arterial injury" and "acute posthemhorrhagic anemia." (Ex. B at 5-6.)[5] Photographs introduced as evidence at trial showed a prominent, 15-20 centimeter scar from behind Hamilton's left ear to just below his jaw bone. (Id. at 8.) D'Alessio questioned Hamilton once his condition stabilized, but Hamilton denied knowing his attacker or how he had been injured. No arrest was made in the attack.

Nine months later, on June 20, 2008, Hamilton was arrested on drug charges. Hamilton testified that, as part of a cooperation agreement with the District Attorney's office, he agreed to provide the District Attorney with information about other crimes, including the September 30, 2007 incident, in exchange for the prosecutor's promise to recommend "youthful offender" treatment in Hamilton's pending criminal action. After executing the cooperation agreement, Hamilton identified Wright as his attacker. At trial, Hamilton again identified Wright as the person who cut him and gave him the scar on his neck, which Hamilton displayed to the jury upon the prosecutor's request.

Finally, the prosecutor introduced as evidence the three recordings of telephone conversations Wright had with Figueroa and Lisa while in prison. The jury listened to the recordings and was provided with transcripts.

### 3.     Wright's Case

Wright did not present evidence at trial.

---

[5] Most of the evidence in the record before the Court regarding the nature of Hamilton's injury consists of descriptions and quotations from the respondent's opposition to Wright's direct appeal. The citations provided for these descriptions and quotations are "People's Exhibit 8 (medical records)" and "People's Exhibits 3-5.

### 4.     Verdict and Sentencing

On February 9, 2009,[6] the jury convicted Wright of both counts of assault in the first

degree (one regarding "serious physical injury" and the other regarding disfigurement), and of

criminal possession of a weapon in the fourth degree. The jury acquitted Wright of attempted

murder in the second degree. On June 23, 2009, Wright was sentenced to two prison terms of 12

years and five years of post-release supervision on the assault counts, and a one-year term on the

weapons count, all to run concurrently.

### C.     Wright's Direct Appeal

Wright filed a counseled direct appeal of his conviction in the Appellate Division on May

11, 2012. In the appeal, Wright argued, first, that the prosecutor committed misconduct by

repeatedly referencing Wright's failure to defend himself by testifying, thus improperly shifting

the burden of proof, and that the trial court failed to mitigate the resulting harm. Second, Wright

argued that the jury's verdicts on the first-degree assault charges were based on legally

insufficient evidence. Alternatively, Wright contended that the verdicts were against the weight

of the evidence. Finally, Wright argued that his sentence was unduly harsh and should be

reduced in the interests of justice.

On December 27, 2012, the Appellate Division unanimously affirmed the judgment of

conviction. People v. Wright, 955 N.Y.S.2d 871 (1st Dep't 2012). The court held that the verdict

finding Wright guilty was based on legally sufficient evidence and was not against the weight of

the evidence. With respect to Wright's ground of prosecutorial misconduct, the Court stated,

> While defendant raises a founded argument that certain comments in the
> prosecutor's voir dire and opening and closing statements were improper in that

---

[6] The trial transcript lists the final trial date as February 9, 2007, which the Court assumes to be an error.
(See T. at 284.)

they tended to shift the burden of proof, it is unpreserved. We decline to review it in the interest of justice. As an alternative holding, we find that any improprieties in the statements of the prosecutor constituted harmless error in light of the evidence of guilt.

Id. (internal citations omitted.)

The New York Court of Appeals denied Wright's application for leave to appeal on June 7, 2013.

### D.    Wright's Federal *Habeas Corpus* Petition

Wright, proceeding *pro se*, filed his petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 on August 5, 2013. Wright did not list any grounds on which he claims he is being held unlawfully in the space provided on the petition form (Pet. ¶ 13), but instead attached the table of contents from his direct appeal (Pet. at 7-9). The Court thus construes Wright's petition to raise the same grounds that were submitted to the Appellate Division and listed by Wright in his petition in response to questions about his direct appeal. (Pet. ¶ 10(e).) The respondent opposed Wright's petition on December 9, 2013. The Court granted Wright until February 25, 2014, to file a reply, but he has not done so.

### DISCUSSION

### I.    Timeliness

It is uncontested that Wright's *habeas* petition is timely filed. The Antiterrorism and Effective Death Penalty Act (the "AEDPA") requires a state prisoner whose conviction has become final to seek federal *habeas corpus* relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year period serves the "well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001). A petitioner's judgment becomes final 90 days from the date the New York State Court of Appeals denies leave to appeal – i.e., after

the "period to petition for a writ of *certiorari* to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190, 1195 & n.1 (2002).

Because the New York Court of Appeals denied Wright leave to amend his direct appeal on June 7, 2013, and Wright did not seek a writ of *certiorari* to the U.S. Supreme Court, his conviction became final on September 5, 2013. Wright had until September 5, 2014, to file his *habeas* petition. Accordingly, Wright's petition, filed August 5, 2013, is timely.

## II.   Exhaustion

### A.   Statement of Law

Before a federal court can review a petition for a writ of *habeas corpus*, a petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A). See also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (stating that, to exhaust a claim, a petitioner must "invoke[] one complete round of the State's established appellate review process" before bringing the same claim in federal court). A claim is deemed exhausted if the petitioner: (1) "fairly presented" to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear it. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 844-48.

To fairly present his claims, a petitioner may not rely solely on general principles of fairness, but instead must refer to specific constitutional provisions or concepts. See Reid v. Senkowski, 961 F.2d 374, 376 (2d Cir. 1992) (stating that minimal reference to the constitution satisfies the exhaustion requirement); see also de la Cruz v. Kelly, 648 F. Supp. 884, 888 (S.D.N.Y. 1986) (finding that the petitioner sufficiently alerted the state court of the constitutional aspect of his claims when he argued that the challenged ruling denied him a fair trial and cited the Fourteenth Amendment). The legal doctrine asserted in the state courts does

not need to be identical to that raised in the *habeas* petition, but "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye v. Att'y Gen. of New York, 696 F.2d 186, 192 (2d Cir. 1982).

The Court of Appeals applies the "fair presentation" standard liberally, allowing that a state court may be deemed to be on notice of the constitutional nature of a claim even if the petitioner did not specifically quote the U.S. Constitution. Other ways that a petitioner may be found to have provided notice sufficiently include "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Ramirez v. Att'y Gen. of New York, 280 F.3d 87, 94-95 (2d Cir. 2001) (citing Daye, 696 F.2d at 194). This position protects petitioners who rely on constitutional principles without citing "book and verse on the federal constitution," while ensuring that state courts have the opportunity to "pass upon and correct" alleged violations of federal rights. Picard v. Connor, 404 U.S. 270, 275, 278 (1971) (internal quotation marks and citations omitted).

**B.      Wright's Claims**

The respondent contends that Wright has exhausted all but one of his claims. The respondent concedes that Wright exhausted his prosecutorial misconduct and legal sufficiency claims, noting that in his direct appeal brief and in his application to the New York Court of Appeals for leave to appeal, Wright alleged facts in support of these claims that are within the mainstream of constitutional litigation. The Court agrees and finds that Wright's claims based on prosecutorial misconduct and sufficiency of the evidence are exhausted.

11

The respondent argues, however, that Wright failed to exhaust his "weight of the evidence" claim and his excessive sentence claim because, on appeal, Wright raised these claims on state law grounds only. As an initial matter, the Court need not decide whether Wright's weight of the evidence claim was exhausted because this claim is not cognizable upon *habeas* review and should be denied on this ground.[7]

With respect to Wright's claim that his sentence was excessive and should be reduced in the interests of justice, the Court finds this claim unexhausted. In alleging this ground on appeal, Wright relied on the Appellate Division's discretionary and plenary power to modify sentences granted under state law. While Wright did not cite federal cases or apply constitutional analysis for any of his claims, his excessive sentence claim additionally does not rely on patterns of facts within the mainstream of constitutional litigation but rather on facts recognized as supporting a purely state law claim. See Rodriguez v. Lee, 10 Civ. 3451 (RMB)(JCF), 2011 WL 1362116, at *7 (S.D.N.Y. Feb. 22, 2011), report and recommendation adopted 2011 WL 1344599 (S.D.N.Y. Apr. 8, 2011) (finding the claim unexhausted where the petitioner "argued on direct appeal that his sentence should be reduced in the interest of justice, but never alluded to a single federal law, case, or constitutional provision"); Polanco v. Ercole, 06 Civ. 1721 (RMB)(DFE), 2007 WL 2192054, at *7 (S.D.N.Y. July 31, 2007) (finding a petitioner's excessive sentence claim unexhausted where it was presented to the state court in interest-of-justice terms under state law);

---

[7] *Habeas* review is limited to violations of the Constitution or federal law. Estelle v. McGuire, 502 U.S. 62, 68 (1991). Claims regarding the weight of the evidence involve issues of state law only and are, therefore, unreviewable upon *habeas* review. See McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus . . . ."); Taylor v. Poole, 538 F. Supp. 2d 612, 618 (S.D.N.Y. 2008) ("It is well established that 'weight of the evidence' claims are not cognizable on federal habeas review . . . .").

McClelland v. Kirkpatrick, 778 F. Supp. 2d 316, 337 (W.D.N.Y. 2011) ("[I]nvoking the power

of the Appellate Division to reduce [the petitioner's] sentence in the interest of justice . . . . [was]

insufficient to alert the state court that the claim [was] of a federal constitutional dimension.");

Stallings v. Woods, 04 Civ. 4714 (RLM), 2006 WL 842380, at *22 (E.D.N.Y. Mar. 27, 2006)

(citing Medina v. Greene, 03 Civ. 8646 (DC), 2004 WL 2809196, at *4 (S.D.N.Y. Dec. 7, 2004))

(finding that the petitioner "did not fairly present the excessive sentence claim in federal

constitutional terms" by appealing to the Appellate Division's power to reduce an excessive

sentence in the interest of justice). Nor does Wright's claim independently raise a federal issue

given that he never alleged that his sentence was outside the range of New York law. See White

v. Kelly, 969 F.2d 1381, 1383 (2d Cir. 1992) ("[N]o federal constitutional issue is presented

where, as here, the sentence is within the range prescribed by state law."); cf. Baide-Ferrero v.

Ercole, 06 Civ. 6961(RJS), 2010 WL 1257615, at *4 (S.D.N.Y. Mar. 31, 2010) (finding a claim

that the petitioner's sentence should be reduced in the interest of justice to not be cognizable on

*habeas* review). Therefore, because Wright has never fairly presented a claim to a state court that

his sentence violates the U.S. Constitution, and because no such claim is presented here,

Wright's excessive sentence claim is unexhausted.

Wright has already been denied leave to appeal by the New York Court of Appeals and,

because his excessive sentence claim is record-based, it cannot be raised on collateral review.

Rodriguez, 2011 WL 1362116, at *7. This claim is thus "deemed exhausted, but . . . procedurally

barred." Id. This procedural bar to *habeas* review can only be overcome "if the petitioner can

first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"

Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012). Wright makes no such showing. Therefore,

Wright's excessive sentence claim is procedurally defaulted and cannot be considered on *habeas* review.

## III.   Merits Review

### A.   Standard of Review

After exhaustion, but before a federal court can issue a writ of *habeas corpus*, a petition must satisfy a "difficult to meet[] . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). Under the AEDPA, *habeas* relief may be granted only when the state court's decision:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court 'applied a rule that contradicts' that precedent, or reached a different result than the Supreme Court on facts that are 'materially indistinguishable.'" Mannix v. Phillips, 619 F.3d 187, 195 (2d Cir. 2010) (internal alterations omitted) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). As long as the state court decision applied the correct legal rule to the facts of a petitioner's case, it is not subject to *habeas* review, even if the federal court would have reached a different conclusion if it were to apply the rule itself. Williams, 529 U.S. at 406.

A state court's decision involves an "unreasonable application" of clearly established federal law if the court identified the legal rule set forth in governing Supreme Court cases, but unreasonably applied the rule to the facts of the case. Id. at 407-08. A federal court may grant

14

*habeas* relief only when the state court's decision, as it pertains to any issue of federal law, was

"objectively unreasonable" in light of relevant precedent; thus, in construing and applying

federal law, even erroneous state court decisions, if deemed reasonable, will survive *habeas*

review. Id. at 409-13; see also Besser v. Walsh, 601 F.3d 163, 178 (2d Cir. 2010) ("The proper

inquiry is not whether a state court's application of, or refusal to extend, the governing law was

erroneous, but whether it was 'objectively unreasonable.'") (quoting Williams, 529 U.S. at 409-

10). "[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's

claim, and when that rejection is on the merits, the federal court will focus its review on whether

the state court's ultimate decision was an 'unreasonable application' of clearly established

Supreme Court precedent." Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001). For federal

*habeas* review, factual determinations made by a state court are presumed correct, and a

petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28

U.S.C. § 2254(e)(1).

## B.   Prosecutorial Misconduct

### 1.   Statement of Law

"[I]t is axiomatic that the Government may not comment on a defendant's failure to

testify at trial," United States v. McDermott, 918 F.2d 319, 327 (2d Cir. 1990), or "suggest [that]

a defendant's silence is 'evidence of guilt,'" Portuondo v. Agard, 529 U.S. 61, 69 (2000)

(quoting Griffin v. California, 380 U.S. 609, 615 (1965)). Nor may the prosecution make any

suggestion that the defendant has any burden of proof. United States v. Bautista, 23 F.3d 726,

733 (2d Cir. 1994) The U.S. Supreme Court has reasoned that "comment on the refusal to testify

is a remnant of the inquisitorial system of criminal justice. . . . It is a penalty imposed by courts

for exercising a constitutional privilege. It cuts down on the privilege by making its assertion

costly." <u>Griffin</u>, 380 U.S. at 614. For this reason, the Fifth Amendment "forbids . . . comment by the prosecution on the accused's silence." <u>Id.</u> at 15. A prosecutor's statements improperly comment on the accused's silence in violation of the Fifth Amendment when "they naturally and necessarily would be interpreted by the jury as a comment on the defendant's failure to testify." <u>United States v. Whitten</u>, 610 F.3d 168, 199 (2d Cir. 2010) (internal quotation marks omitted).

        **2.**    **Facts**

        **a.**    **Pre-Trial Proceedings**

At the pre-trial evidentiary hearing on February 3, 2009, regarding the three telephone recordings, the prosecutor argued that the recordings would be offered not to prove the truth of their content, but to show Wright's state of mind and his acknowledgement of his involvement in the charged crimes. The prosecutor provided to the judge a detailed explanation of his intended argument. He intended to offer the recordings both for what Wright did say and for what Wright did not say: "[Wright] acknowledges that [he] can't be charged for that because [Will Hamilton] hasn't come forward so how can [he] be charged? He doesn't say I don't know what they're talking about. He doesn't say it's not me. He doesn't say they're framing me. These are all the arguments I'm going to be making. . . . He's not denying, he's not saying I don't know what they're talking about." (V. at 16, 27.) The prosecutor did not use the words "defend" or "defense" in this context once during the 20-transcript-pages-long proceeding in which he explained how he would use the telephone recordings at trial. Wright's counsel argued that the recordings were not probative of Wright's state of mind and that, if they were offered for that purpose, their ambiguity would be "too prejudicial and . . . would force" Wright to testify when "he does not wish to testify, and that's important to him and that's a right that he has." (V. at 19.)

Voir dire began immediately after this proceeding. Wright's counsel explained to the prospective jurors the government's burden of proof and questioned them extensively on their ability to remain neutral in response to Wright's potential decision not to testify. Specifically, Wright's counsel invoked scenarios in which people are accused of things they did not do, and then observed that the "human tendency" is to "defend yourself" and that the "natural reaction [is] to say why isn't this person standing up and defending [himself?]." (V. at 135, 234.) After stating the proposition that defending oneself is the natural reaction to a false accusation, and eliciting agreement to that statement from the prospective jurors, he would explain that, at trial, jurors must abide by an oath that includes not drawing negative inferences from a defendant's failure to defend himself by testifying. Variations on the phrase "defend yourself" in the context of a defendant not testifying at trial were used repeatedly throughout voir dire. (See, e.g., V. at 135, 138, 215, 233, 234, 283.)

### b.  Trial

During his opening statement, the prosecutor told the jury that they would hear the three telephone recordings. He added, "And you're going to hear [Wright] comment about this, about coming charges . . . . And there was a lot of discussion during jury selection about what do you do when someone accuses you, you defend. You defend. And you're going to hear he doesn't defend. He's talking to his baby's mother. He's talking to his friend. He doesn't defend." (T. at 16.) Wright's counsel interrupted: "Judge, I just have to object as to 'he doesn't defend,'" to which the court responded, "You may respond in your opening statement." (T. at 16-17.) Shortly after, the prosecutor, continuing to use the present tense, argued to the jury, "[Wright] doesn't say I didn't do it. He doesn't say I don't know anything about it." (T. at 17.)

Wright did not call witnesses or testify in his defense.

During his summation, the prosecutor referred to the telephone recording transcripts and said to the jury, "You have the defendant's words. I am going to explain them to you. You read them as it is played and you can listen to it again. You have to ask yourselves why no defense?" (T. at 232.) Afterwards, in reference to the recording of Wright's second telephone conversation with Lisa regarding Hamilton not appearing before the Grand Jury, the prosecutor said:

> [A]nd I want to come back to jury selection, Mr. Brown raised the issue a number of times about can you follow the Court's instruction that if the defendant does not testify, if he does not defend himself, that you will not consider that at all and each of you said yes. That is why you're here on this jury. And we all agreed the natural instinct is to defend yourself. But we also all agreed that in court, here in this forum, that's taken off. You just accept that as an exception because our natural instinct is to defend yourself.

(T. at 241-42.) The prosecutor then invoked a specific hypothetical scenario discussed during voir dire in the context of Wright potentially not testifying:

> I don't know if you remember, for those of you who were here, the juror who was asked about the stapler. What if you were accused of taking a stapler? Well, if I didn't do it, if I didn't take it I'd say so. And everybody went, yeah, of course. You defend yourself. And that is what is so remarkable about these calls. This is to his buddy, the guy from the street, the guy who speaks his language. And he's not defending himself one bit because he knows that William Hamilton – he doesn't know that --

Wright's counsel interjected, "Objection, it's a fact not in evidence." The court replied, "Well, that's his recollection. Overruled." (T. at 241-42.) The prosecutor continued to emphasize the theme of Wright not defending himself, pointing out that Wright "doesn't say what are they talking about, they're framing me" (T. at 242) and that "[n]obody says, oh, yeah, I didn't do it, I've been falsely accused" (T. at 250).

On appeal, the Appellate Division found that Wright's arguments that these comments "shift[ed] the burden of proof" were "founded." Wright, 955 N.Y.S.2d 871.

18

### 3.    Procedural Default

As a threshold matter, Wright's prosecutorial misconduct claim might be procedurally defaulted because the Appellate Division denied it on state procedural grounds. A federal court generally may not review a state court decision that "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); Bierenbaum v. Graham, 607 F.3d 36, 47 (2d Cir. 2010). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (finding that a state court's reliance on a procedural ground as one basis for the denial of the claim precludes *habeas* review even if it also considered the merits of the claim). A "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state, and application of the rule would not be 'exorbitant.'" Bierenbaum, 607 F.3d at 47 (quoting the Court of Appeals quoting Lee, 534 U.S. at 376). Three considerations are useful in evaluating whether the application of the rule would be exorbitant:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (citation omitted); see Lee, 534 U.S. at 381-85. This evaluation balances "the state interest in a procedural rule against the circumstances of a

particular case" and "informs the . . . critical inquiry [of] whether [courts] can deem the application of a state rule so 'exorbitant' as to render it inadequate to preclude habeas review of the federal claim." Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks omitted); see Garvey, 485 F.3d at 714.

If the state ground for denying the claim is found to be independent of the federal question and adequate to the support the judgment, the procedural default may only be bypassed if the petitioner "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" DiSimone v. Phillips, 461 F.3d 181, 190-91 (2d Cir. 2006) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998).

### a.      New York's Contemporaneous Objection Rule

The Appellate Division held, without discussion, that Wright's prosecutorial misconduct claim was unpreserved, citing People v. Gray, 86 N.Y.2d 10, 19-20 (1995). People v. Gray concerns New York's "contemporaneous objection" rule, which states that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law ("CPL") § 470.05(2). "The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time." Garvey, 485 F.3d at 714. (citing People v. Jones, 81 A.D.2d 22, 41-42 (2d Dep't 1981)). "This rule has been interpreted by New York courts to require, 'at the very least, that any matter which a party wishes' to preserve for appellate review be 'brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error.'" Whitley, 642 F.3d at 286 (quoting People v. Luperon, 85 N.Y.2d 71, 78 (1995)). "A 'general objection is not

20

sufficient,' because, as 'New York's highest courts uniformly instruct,' to preserve a claim, a defendant must 'specifically focus on the alleged error.'" Id. (quoting Garvey, 485 F.3d at 714).

With respect to whether the contemporaneous objection rule constitutes an independent and adequate state ground, the ground is plainly independent of the federal question and the rule has been recognized by the Court of Appeals as being firmly established and regularly followed. See Whitley, 642 F.3d at 286 ("Our case law has long made clear that New York's contemporaneous objection rule is just such a 'firmly established and regularly followed' rule."). Thus, the "independent" prong is satisfied, and the "adequate" prong is satisfied unless application of the contemporaneous objection rule in the particular circumstances of this case was exorbitant. See Garvey, 485 F.3d at 713-14 (citing Lee, 534 U.S. at 376.)

### b.   Whether Application of the Contemporaneous Objection Rule Was Exorbitant

The first consideration is "[w]hether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision." Garvey, 485 F.3d at 719. The "actually relied on" part of this inquiry is an inapt consideration with respect to the contemporaneous objection rule because the procedural violation occurs upon appeal rather than in the trial court. See Garvey, 485 F.3d at 709; Cotto v. Herbert, 331 F.3d 217, 242 (2d Cir. 2003). The Court finds that "whether perfect compliance with the state rule would have changed the trial court's decision" also has minimal relevance in the circumstances presented here. The Appellate Division found that Wright's counsel did not alert the trial judge to the contested issue when he objected to the language "he doesn't defend," a finding the Court does not review. See Cotto, 331 F.3d at 247 ("Our task is not to determine whether [the state court] ruling was correct, but to determine its adequacy to preclude federal habeas review."). Thus, the "perfect compliance" component here would be pure speculation as

21

to how the trial judge would have ruled on a disputed issue had he been made aware of it, which is plainly not the purpose of this inquiry. See Lee, 534 U.S. at 387 (finding it salient that there was no "indication that formally perfect compliance with the Rules would have changed the trial court's decision"). The first consideration therefore is not a useful gauge of exorbitance in these circumstances. Cf. Whitley, 642 F.3d at 289 (finding in similar circumstances that the outcome of "perfect compliance" would be "impossible to conclusively determine," rendering "this first consideration 'not very relevant in cases . . . where we are reviewing application of the 'contemporaneous objection' rule.'" 642 F.3d at 289 (quoting Monroe v. Kuhlman, 433 F.3d 236, 242 (2d Cir. 2006)).

The second consideration is whether state case law exists indicating that compliance with the procedural rule was demanded in the specific circumstances presented in this case. Id. at 290; Cotto, 331 F.3d at 240. New York law is clear that the contemporaneous objection rule is applied generally in these circumstances. See Gray, 86 N.Y.2d at 19-20; People v. Ross, 89 A.D.3d 495 (1st Dep't 2011) ("By failing to object, or by failing to make specific objections on the same grounds raised on appeal, defendant did not preserve his challenges to the prosecutor's summation."); People v. Mack, 14 A.D.3d 517 (2d Dep't 2005) ("Although the defendant objected to that testimony . . . , he did not specify the ground now raised on appeal and failed to object to the [trial] court's remedy. Therefore, the issue is unpreserved for appellate review."). This inquiry examines whether there are "unique circumstances" that would distinguish this matter from all past cases in which New York courts have applied the contemporaneous objection rule. See Lee, 534 U.S. at 382. The circumstances here are either that defense counsel did not attempt to raise the specific objection or that he believed he did raise the specific objection that the prosecutor was impermissibly commenting on Wright's failure to testify at

trial. New York case law demands compliance with the contemporaneous objections rule in both these circumstances.

The third – and most important – consideration is whether Wright "substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate, governmental interest." Garvey, 485 F.3d at 719; see also Lee, 534 U.S. at 382. The crux of this consideration is whether defense counsel can be found to have put the trial judge on notice as to his argument that the prosecutor was commenting on Wright's failure to testify in his defense, even if defense counsel did not comply fully with the rule. See Garvey, 485 F.3d at 720 (stating, with respect to this third inquiry, that, "[h]ad the defendant here put the trial court on notice regarding his argument that the civilian-orchestrated identification was suggestive, perhaps it would have been exorbitant to punish him for not complying with some technical aspect of [the contemporaneous objection rule]"). The Appellate Division found that Wright procedurally defaulted on his prosecutorial misconduct claim by not complying with the contemporaneous objection rule. In other words, the Appellate Division found that defense counsel's two objections were not sufficient to put the trial judge on notice that Wright was contesting the prosecutor's statements because they were commenting on Wright's failure to testify. The Court cannot review the Appellate Division's finding as to the adequacy of defense counsel's objections, but does find that there is no clear evidence at any point in the record that the trial judge understood that Wright was protesting the prosecutor's comments on the ground that such comments shifted the burden of proof or directed the jury's attention to Wright's failure to testify. At a minimum, substantial compliance with the rule here would require bringing the issue to the judge's attention at some point during the trial. The Court cannot find that Wright substantially complied with the contemporaneous objection rule.

23

Based on the foregoing considerations, New York's interest in requiring a defendant to inform the trial judge "of the nature and scope of the matter [the] defendant contests so that it may be dealt with at that time," Jones, 81 A.D.2d at 41-42, is not diminished by any unique circumstances in this case. Cf. Lee, 534 U.S. at 379-80 (finding that "in rare circumstances . . . unyielding application of the general [procedural] rule would disserve any perceivable interest"). Accordingly, application of the contemporaneous objection rule was not exorbitant. The Appellate Division's denial of Wright's prosecutorial misconduct claims, therefore, rests on a state law ground that is independent of the federal question and adequate to support the ruling. Unless an exception applies, Wright's prosecutorial misconduct claim is defaulted and precluded from federal *habeas* review.

### c.     Whether Wright Can Show Cause and Prejudice

A federal court may review a petitioner's procedurally defaulted claim if the petitioner can show cause for the procedural default and prejudice resulting from the violation of federal law, or if the petitioner can show that he is actually innocent. See Trevino v. Thaler, 133 S. Ct. 1911, 1917 (2013); Bousley, 523 U.S. at 622; Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008). Wright has not submitted any evidence in this matter and has never claimed "actual innocence." Because innocence is not at issue here, cause and prejudice is the only means by which the Court may review the merits of Wright's claim. See Clark, 510 F.3d at 393.

A petitioner can establish cause by showing either that he was blocked from complying with the state rule by an objective factor external to his defense, or where trying to raise the claim would have been futile in light of prior state case law. See Id. at 112-13. The "prejudice" requirement is established by evidence demonstrating "actual prejudice resulting from the errors of which [the petitioner] complains." United States v. Frady, 456 U.S. 152, 168 (1982) (internal

quotation marks omitted); see also Gutierrez v. Smith, 702 F.3d 103, 112 (2d Cir. 2012). "The error must have resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.'" Gutierrez, 702 F.3d at 112 (quoting Murray v. Carrier, 477 U.S. 478, 516 (1986)) (internal quotation marks omitted).

Wright does not attempt to show cause for the procedural default, nor is there any indication of cause in the record. Because Wright cannot show cause, he cannot satisfy the requirements to bypass the procedural bar. Wright's prosecutorial misconduct claim is procedurally defaulted and does not meet an exception; it is therefore precluded from federal *habeas* review and should be denied.

### C.   Sufficiency of the Evidence

Evidence is sufficient to support a conviction when, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A *habeas* petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction. Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." Cavazos v. Smith, 565 U.S. __ at __, 132 S. Ct. 2, 4 (2011). Rather, a state court decision rejecting a sufficiency challenge may be overturned on federal *habeas* review only upon finding that the "decision was 'objectively unreasonable.'" Id. (quoting Renico v. Lett, 559 U.S. __, at __, 130 S. Ct. 1855, 1862 (2010)). The Supreme Court has referred to this as a "twice deferential standard." Parker v. Matthews, 567 U.S. __, at __, 132 S. Ct. 2148, 2152 (2012); Cavazos, 132

25

S. Ct. at 4 ("It is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").

Wright contends that the jury's verdicts on first-degree assault under Penal Law § 120.10(1) (regarding causing "serious physical injury") and § 120.10(2) (regarding permanent disfigurement) were based on legally insufficient evidence. The Appellate Division found that the prosecution's "evidence demonstrated that the wound the victim sustained constituted 'serious disfigurement.'" Wright, 101 A.D.3d at 645. The evidence presented to the jury to support that finding included witness testimony that Wright slashed Hamilton's neck with a box cutter, causing profuse bleeding and a 20-centimeter laceration that required stitches and five days of hospitalization. The jury saw photographs of the wound as well as the appearance of Hamilton's scar when he testified.

The Appellate Division's finding was not objectively unreasonable in light of the evidence at trial and New York case law finding evidence of this nature sufficient to constitute "serious disfigurement." See People v. McDuffie, 293 A.D.2d 287 (1st Dep't 2002) (upholding conviction for first degree assault where "the jury observed the victim's permanent scars and could have reasonably concluded that they constituted protracted disfigurement"); People v. Wade, 187 A.D.2d 687 (2d Dep't 1992) (finding the government's evidence sufficient to prove first degree assault where the victim had been cut in face with a razor and where a scar was visible eight months later). Further, given that Hamilton was slashed in the neck, bled profusely, and suffered "post-traumatic arterial injury" and "acute posthemhorrhagic anemia," the jury could have reasonably found the evidence sufficient "to show that there was a substantial risk that [Hamilton] could have died from his wounds without medical attention," which may reasonably be found sufficient to constitute "substantial risk of death" under Penal Law §

10.00(10) and thus also constitute "serious physical injury" under Penal Law § 120.10(1).

Santone v. Fischer, 689 F.3d 138, 149-150 (2d Cir. 2012). Given the evidence presented at trial, the Appellate Division's finding that the jury's verdicts were supported by sufficient evidence was not objectively unreasonably. Therefore, the Court cannot find that the Appellate Division's denial of Wright's legal sufficiency claim was contrary to or an unreasonable application of federal law. Wright's petition should be denied on this ground.

## CONCLUSION

For these reasons, I recommend that Wright's petition for a writ of *habeas corpus* be DENIED as to all claims. Because Wright has not made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

*   *   *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

27

Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Gardephe. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:          New York, New York
                June 26, 2014